IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CANDACE LETRICE MCBRIDE, | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-00351-ESC |
| | § | |
| vs. | § | |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| *Defendant.* | § | |

## **ORDER**

This order concerns Plaintiff Candace Letrice McBride's request for review of the administrative denial of her application for disability insurance benefits ("DIB") under Title II. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#9].

After considering Plaintiff's Opening Brief [#11], Defendant's Brief in Support of the Commissioner's Decision [#13], Plaintiff's Reply Brief [#17], the transcript ("Tr.") of the Social Security Administration proceedings [#4], the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that the Administrative Law Judge ("ALJ") failed to consider the evidence of military sexual trauma underlying Plaintiff's 100 percent disability rating by the Veterans Administration ("VA") and the effect it might have on Plaintiff's residual functional capacity, specifically as to her social limitations. This error was not harmless. The

1

undersigned will therefore vacate the Commissioner's decision finding Plaintiff not disabled and remand this case for further proceedings consistent with this opinion.

## I. Legal Standards

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) the impairment prevents the claimant from performing past relevant work, and (5) the impairment prevents the claimant from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*,

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## II.  Factual and Procedural Background

Plaintiff Candace Letrice McBride filed her application for DIB in November of 2018, alleging disability beginning November 1, 2018, based on posttraumatic stress disorder ("PTSD"), depression, anxiety disorder, hearing loss, back problems, and herniated discs. (Tr. 208, 263.) McBride was 51 years old at the time of her application and has a twelfth-grade education. (Tr. 208, 264–65.) McBride also has a history of military service from 1989 to 1991 and work experience as a caretaker and dispensing optician. (*Id.*) The VA found Plaintiff 100 percent disabled effective July 11, 2016, due to PTSD from military sexual trauma ("MST"). (Tr. 992–94.)

The Adult Function Reports completed by McBride and her husband in support of her DIB application both reference McBride's PTSD from her military service. (Tr. 251.) McBride's husband stated that "emotionally it can be a roller coaster ride" with McBride. (*Id.*) McBride admitted that it is hard to control her temper; that she "gets upset with people"; that it is anxiety-provoking to be in public; and that she prefers to stay home where she feels safe. (Tr. 269, 272–74.)

The Social Security Administration ("SSA") denied McBride's claim in January 2019 and again upon reconsideration in March 2019, finding McBride to have no severe mental impairments. (Tr. 95–106, 108–19.) McBride requested a hearing, and there was a hearing

before an ALJ in February of 2020.  (Tr. 53–94.)  The ALJ denied McBride's claims in April of

that year.  (Tr. 33–46.)  In issuing the decision, the ALJ specifically referenced the VA disability

rating and McBride's MTS, noted her treatment, and concluded that McBride was relatively

stable.  (Tr. 39, 41.)  The Appeals Council thereafter denied review, but McBride filed suit in the

Southern District of Indiana, seeking judicial review.  (Tr. 205–07, 1087–95.)  The parties jointly

moved for remand, and the District Court granted the motion and issued an order of remand for

further administrative proceedings.

McBride appeared before a new ALJ on May 2, 2022.  (Tr. 1028–60.)  At this hearing,

McBride stated that she was sexually assaulted while in the military and that her daughter (who

was also currently in the military) suffered a similar trauma and got pregnant.  (Tr. 1059.)

McBride's attorney emphasized the history of PTSD and directed the ALJ to consider McBride's

counseling records.  (Tr. 1041.)  McBride testified to having a service dog, to struggling with

being around people, and to having lost her last job due to confrontations with others.  (Tr. 1052–

53, 1056.)  McBride also testified that she tried working as an Uber driver but had a panic attack

when there was a male customer in the backseat of her vehicle.  (Tr. 1056.)

The ALJ issued an unfavorable decision on January 20, 2023.  (Tr. 1002–25.)  The ALJ

found that McBride met the insured-status requirements of the SSA and applied the five-step

sequential analysis required by SSA regulations.  At step one of the analysis, the ALJ found that

McBride did not engage in substantial gainful activity between November 1, 2018, and the date

of last insured of December 31, 2022.  (Tr. 1007.)  At step two, the ALJ found McBride to have

the severe impairments of degenerative disc disease, history of right shoulder rotator cuff tear,

mild degenerative joint disease of the hands and other joints, psoriasis and psoriatic arthritis,

meniscus tear, carpal tunnel syndrome, PTSD, and depressive disorder.  (*Id.*)  At step three, the

4

ALJ found that McBride's impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render McBride presumptively disabled.  (Tr. 1009–10.)  In evaluating whether McBride's limitations satisfy a listing regarding mental impairments, the ALJ evaluated all four areas of the psychiatric review technique ("PRT")[2] and found McBride has only mild limitations in interacting with others, noting that McBride spends time with others, utilizes social media, and there are no treatment records documenting any significant issues with her ability to get along and relate to others.  (Tr. 1009.)

Before reaching step four of the analysis, the ALJ found McBride retains the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), with various additional limitations.  (Tr. 1011–15.)  None of these additional limitations pertained to McBride's mental impairments related to issues with social interaction.  The ALJ did, however, limit McBride to understanding, remembering, and carrying out detailed but not complex instructions "due to her PTSD and depression."  (Tr. 1011–15.)  Nowhere in the ALJ's decision or discussion of McBride's RFC did the ALJ reference or discuss the VA disability rating or McBride's history of MST.

Based on this RFC, at step four the ALJ found McBride incapable of performing her past relevant work as a dispensing optician.  (Tr. 1015.)  At step five, the ALJ concluded that considering McBride's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that McBride can perform, such as a general

---

[2] The PRT is the method used for evaluating mental impairments at all levels of the administrative review process.  The four functional criteria considered as part of the PRT (referred to as the Paragraph B criteria) are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

merchandise salesclerk.  (Tr. 1016.)  Accordingly, the ALJ determined that McBride is not

disabled for purposes of the Act, and therefore not entitled to receive DIB.  (Tr. 1016.)  The

Appeals Council denied McBride's request for review on January 27, 2021.  (Tr. 1–6.)  McBride

filed this case on March 22, 2023.

### III.  Analysis

There is only one issue raised in this appeal.  McBride argues that the ALJ's decision is

not supported by substantial evidence and is the product of legal error because the ALJ failed to

consider the supporting evidence underlying her 100 percent disability rating from the VA in

accordance with the requirements of 20 C.F.R. § 404.1504.  It is undisputed that the ALJ on

remand did not mention the VA disability rating at any point in her decision.  Nor did the ALJ

reference the MST that occurred when McBride was in basic training in the military.  The Court

agrees with McBride that this was reversible error.

The governing regulation provides the following:

> Other governmental agencies and nongovernmental entities—such as the
> Department of Veterans Affairs . . . — make disability, blindness,
> employability, Medicaid, workers' compensation, and other benefits
> decisions for their own programs using their own rules. Because a decision
> by any other governmental agency or a nongovernmental entity about
> whether you are disabled, blind, employable, or entitled to any benefits is
> based on its rules, it is not binding on us and is not our decision about
> whether you are disabled or blind under our rules. Therefore, in claims
> filed (see § 404.614) on or after March 27, 2017, we will not provide any
> analysis in our determination or decision about a decision made by any
> other governmental agency or a nongovernmental entity about whether
> you are disabled, blind, employable, or entitled to any benefits. However,
> we will consider all of the supporting evidence underlying the other
> governmental agency or nongovernmental entity's decision that we
> receive as evidence in your claim in accordance with § 404.1513(a)(1)
> through (4).

20 C.F.R. § 404.1504 (emphasis added).  The Commissioner argues that the ALJ properly

considered Plaintiff's PTSD and depression and the governing regulation does not require any

analysis of the VA disability rating.  Even though the ALJ did not specifically mention the MST evidence, the Commissioner argues that the ALJ clearly indicated that she considered the record as a whole when she stated: "[A]fter careful consideration of all the evidence, the undersigned concludes the claimant was not under a disability" during the relevant period.  (Tr. 1006.)  The Commissioner asks the Court to "take the ALJ at her word," especially given her thorough analysis of over 2,000 pages of medical records.

In light of the established record as to McBride's sexual trauma and social impairments stemming therefrom, the ALJ's failure to discuss her diagnosed MST anywhere in her opinion was error.  The VA's disability rating assigned McBride a 100 percent disability rating based on PTSD **due to MST** and listed the following long list of observed symptoms:

> forgetting names, depressed mood, near-continuous depression affecting ability to function independently, appropriately and effectively, impaired judgment, mild memory loss, chronic sleep impairment, difficulty adapting to work, grossly inappropriate behavior, intermittent inability to perform maintenance of minimal personal hygiene, difficulty adapting to work-like setting, intermittent inability to perform activities of daily living, circumlocutory speech, suspiciousness, disturbances of motivation and mood, forgetting recent events, near-continuous panic affecting ability to function independently, obsessional rituals which interfere with routine activities, speech intermittently irrelevant, difficulty adapting to stressful circumstances, speech intermittently obscure, circumstantial speech, anxiety, occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, speech intermittently illogical, difficulty in establishing and maintaining effective work and social relationships, forgetting directions.

(Tr. 993 (emphasis added).)  The administrative record also contains records from the VA regarding McBride's MST and related treatment.  These records establish that McBride was 19 years old when she suffered the MST in basic training.  (Tr. 1713.)  Her drill sergeant sexually harassed her and forced her to have sexual intercourse on multiple occasions.  (*Id.*)  This resulted

in McBride having issues with intimacy and trust; she has been married six times since the MST. (*Id.*)

As a result of the MST finding, McBride was assigned an "Outpatient Coordinator" regarding her PTSD as early as March 2020 and was entitled to free MST-related treatment. (Tr. 1779.) Throughout 2020, the Outpatient Coordinator attempted to establish treatment for McBride but was unsuccessful in light of McBride's plans to move out of state. (Tr. 1668, 1779, 2131.) Notes reflect that McBride was future oriented in December 2020 and not suicidal. (Tr. 1668.) Then, in February 2021, there are notes that McBride was requesting therapy for PTSD secondary to her MST and was planning to relocate to Houston. (Tr. 1638.) Notes from June 2021 reference the retriggering of McBride's MST due to her daughter's own MST also in the military, which resulted in pregnancy. (Tr. 2520.) McBride requested an Outreach Coordinator closer to her new home. (*Id.*)

In September 2021, McBride scheduled an appointment with the VA in Texas regarding MST and was provided with an overview of the various treatment paths. (Tr. 2973.) The following month, McBride had an initial assessment with Kathryn Holley, LPMHC, during which she reiterated her interest in treatment for MST and booked appointments to establish care. (Tr. 2957.) McBride also again mentioned the triggering of her PTSD due to her daughter's similar experience. (*Id.*) Medical records from November 2021 list McBride as a veteran with a history of MST-PTSD and note that McBride did receive some MST counseling in California but stopped due to worsening anxiety. (Tr. 2930–31.) The records further state that McBride was struggling with feelings of guilt around her past sexual trauma, was not handling stress well, was suffering from crying spells, and staying in bed. (*Id.*) These notes include a list of symptoms exhibited by McBride related to the MST and PTSD, including "intrusive

memories," "intense or prolonged psychological distress to internal/external reminders," "hypervigilance," and symptoms causing "significant distress or impairment in social, occupational, and functioning." (Tr. 2931–32.)

Again, the ALJ did not reference *any* of this evidence in finding McBride to have zero social impairments related to her recognized severe impairment of PTSD. And the ALJ did not discuss the VA disability rating or the MST, even as a diagnosis, in describing McBride's PTSD and mental impairments. True, the Fifth Circuit does not require the ALJ to specifically cite every piece of medical evidence in the administrative record to discharge her duty to consider all the evidence at issue. *See Castillo v. Barnhart*, 151 Fed. App'x 334, 335 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Nonetheless, the governing regulations specifically require the ALJ to consider "all the supporting evidence underlying" a VA disability rating. 20 C.F.R. § 404.1504. There is no indication in the record that the ALJ did so here. The ALJ's inclusion of the boilerplate statement that she rendered her decision "after careful consideration of all the evidence" does not prove otherwise.

Moreover, the Court is not convinced by the Commissioner's argument that substantial evidence supports the ALJ's overall decision not to impose limitations in the RFC regarding McBride's ability to interact with others. The Commissioner argues that regardless of any evidence of MST, there is more than substantial evidence that Plaintiff has lots of social interaction and that her PTSD is mild—whether it stems from MST or something else. The Commissioner directs the Court to notes of normal mental status examinations from 2019 and 2020, for example, specifically noting that McBride at the time had good judgment and insight and intact personal relationships. (Tr. 367–68, 371, 2331.) The ALJ also cited this evidence. (Tr. 1013.) Yet, these notes predate the 2021 evidence of the retriggering of McBride's PTSD

from her MST.  Additionally, the Commissioner focuses heavily on the evidence that McBride also complained of worsening PTSD in December 2020 due to other stressors completely unrelated to her MST, such as challenges caring for her "medically fragile" son, the COVID-19 pandemic, a cancer diagnosis, and two changes in residence.  (Tr. 1013, 2321.)  That McBride's PTSD worsened independent of the retriggering of her MST does not negate the symptoms related to social interaction uniquely attributable to her sexual trauma.  Furthermore, the ALJ's characterization of McBride's activities of daily living ("ADLs") in 2021 as "fairly normal" is not evidence bearing on McBride's ability to interact with others.  The only ADLs referenced in the ALJ's opinion are her ability to prepare meals, perform household chores, use a computer, and manage her finances.  (Tr. 1013–14.)  When pressed at the hearing, the Commissioner could only point to evidence of McBride's ability to interact with her family, medical providers, and through social media.  None of these abilities bear on McBride's ability to interact with the general public, strangers, or men who could trigger her MST-specific PTSD.

Viewing the ALJ's discussion of the mental-health evidence as a whole, the only evidence that provides some support for the lack of limitations as to social interaction is the fact that McBride testified at the hearing that she was not currently undergoing mental health treatment, there is no record of emergency treatment, and the medical records demonstrate that her PTSD had remained relatively stable and controlled by medication.  (Tr. 1012–13.)  Yet regardless of these considerations, the ALJ's discussion does not acknowledge any persisting symptoms related to McBride's social anxiety and social capabilities due to MST.  McBride consistently stated in her Adult Function Reports and in her hearing testimony that she struggles to get along with others, becomes anxious around strangers, limits interactions to her family, prefers being home where it is safe, and does not go out in public due to challenges dealing with

others.   (Tr. 242, 243, 246, 274, 280.)   VA notes from November 2021 identify ongoing symptoms such as hypervigilance and impairment in social functioning stemming from her MST. (Tr. 2931–32.)   The ALJ does not explain why McBride's relative stability on her PTSD medication forecloses any limitations as to her interactions with the public.  Finally, the fact that McBride continued to work after being discharged from the military and suffering from MST for almost ten years, while some evidence of her functional capacity, is not evidence that conclusively resolves the question of whether her MST and its recent retriggering—in combination with other symptoms—limits her functional social abilities.

In summary, the ALJ's failure to consider McBride's MST and the limitations resulting therefrom was error, and this was not harmless.  The *only* identified job the ALJ found McBride could perform at step five is that of a general merchandise salesclerk, a position that requires significant contact with people, including strangers and including males.  *See* Dictionary of Occupational Titles ("DOT"), No. 290.477–014.  Had the ALJ considered McBride's MST and the specific evidence from 2021 that her PTSD related to her MST had been retriggered by her daughter's similar trauma (evidence that was not in the record when the first ALJ rendered a decision), she might have imposed limitations on McBride's ability to interact with others. "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."  *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). It is not inconceivable here.  Accordingly, the ALJ's failure to consider the supporting evidence underlying the VA's disability rating affected McBride's substantial rights and could have affected the outcome of the proceedings.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of McBride's

mental impairments flowing from her MST and the other evidence underlying the VA disability rating.  It may be that on remand the ALJ will again find that McBride's RFC need not include any limitations as to social interaction.  However, the ALJ must explain her consideration of McBride's MST specifically as to her ability to interact with others as required by the governing regulations and make such a finding.

## IV.  Conclusion

Based on the foregoing, the Court finds that the ALJ erred in failing to consider all the evidence underlying the VA's 100 percent disability rating based on McBride's MST. Therefore, the Commissioner failed to satisfy her burden to demonstrate that McBride is capable of performing other work in the national economy despite her limitations.  Because this error was not harmless,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that McBride is not disabled is **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

SIGNED this 11th day of March, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE